UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROSE MARIE BIERRA GLASPER ET                CIVIL ACTION
AL

VERSUS                                      NO: 06-2040

MARLIN GUZMAN ET AL                         SECTION: J(2)


## ORDER AND REASONS

Before the Court is Defendant Marlin N. Gusman's and Dr.
Richard Inglese's (collectively "Defendants") **Motion for Summary
Judgment (Rec. Doc. 39)**, seeking summary dismissal of Plaintiffs'
claims under 42 U.S.C. §§1983 and 1988 pursuant to the Eighth and
Fourteenth Amendments, arising out of the death of Joe Glasper,
Plaintiffs' husband/father, while in Gusman's custody in Orleans
Parish Prison ("OPP").

Plaintiffs' complaint states causes of action under §§ 1983
and 1988 ("federal claims"), as well as causes of action for
wrongful death and survival under Louisiana Civil Code Article
2316. Plaintiff has sued Gusman and Inglese, as well as unnamed
defendants who allegedly treated Glasper during the events
leading to his death.

After review of the record, the memoranda of counsel, and
the applicable law, the Court finds that Defendants motion should
be granted for the reasons that follow.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Glasper was arrested on January 14, 2004 and charged with second-degree murder in Orleans Parish. He was released from custody the next day on a commercial surety bond and remained on bond after a not guilty plea at his arraignment on June 22, 2004.

On October 17, 2004, Glasper was admitted to the Medical Center of Louisiana at New Orleans ("MCLNO") complaining of chest pains and shortness of breath, as well as swelling in his lower leg. Glasper's treating physician at the time discovered a blood clot in Glasper's left leg, part of which had broken off and migrated to Glasper's lung. Five days later Glasper was released with a diagnosis of pneumonia, pulmonary embolism with infarction, chronic airway obstruction, hypertension, diabetes mellitus, kidney disorder, coronary atherosclerosis of the native coronary vessel, and esophageal reflux. Upon discharge from MCLNO, Glasper was prescribed numerous medications to treat his various conditions.[1] Shortly thereafter, Glasper's attorney filed a motion to continue his murder trial based on his health

---

[1] Specifically, Glasper was prescribed the following: (1) Metoprolol for treatment of rapid heart rhythms and lowering of blood pressure; (2) Lisinopril for high blood pressure and treatment of congestive heart disease; (3) Zocor for reduction of cholesterol and triglyceride levels; (4) Prevacid for acid reflux disease; (5) Coumadin - a blood thinner/anti-coagulant to treat present and prevent future blood clots; (6) Lovenox - an injectable anti-coagulant; (7) Amitryptiline - an anti-depressant; (8) Levaquin - an antibiotic; (9) Combivent, to treat restricted airways; and (10) Tylenol.

problems.  The motion was denied, and on November 8, 2004, Dr.
Sun Chaney, one of Glasper's treating physicians at MCLNO
testified that Glasper's various conditions were not life-
threatening as long as he was properly medicated.  In any event,
Glasper's trial was continued until December 6, 2004.

After a two-day trial, Glasper was found guilty and remained
on bond subject to a 24-hour curfew pending his sentencing
scheduled for March 11, 2005.  The sentencing was continued to
April 13, 2005, with Glasper remanded to the custody of the
Orleans Parish Criminal Sheriff's Office ("OPCSO") in the
interim.  En route to the April 13 sentencing, Glasper feinted,
resulting in a continuance of the sentencing to May 13, 2005.  In
the interim, Glasper died in prison on April 22, 2005.

Plaintiffs seek damages for Glasper's death under §§1983 and
1988 as well as Louisiana law, alleging Gusman's and Inglese's
failure to properly medicate Glasper while he was in custody.


## THE PARTIES' ARGUMENTS

As an initial matter, Gusman argues that Plaintiffs have not
alleged that he was a medical professional responsible for
Glasper's medical care.  As such, because the complaint
apparently asserts claims against Gusman under a theory of
vicarious liability for the actions of others, their federal
claims against Gusman should be subject to dismissal under Alton

3

v. Texas A&M University, 168 F.3d 196, 200 (5th Cir. 1999).

As for the claims against Inglese, he argues that the Plaintiffs have not shown that the medical care provided to Glasper during his incarceration constituted "cruel and unusual punishment" under the Eighth Amendment to a sufficient degree to support claims under §1983. Inglese argues that the Eighth Amendment forbids conditions of confinement that are incompatible with evolving standards of decency or which involve the unnecessary and wanton infliction of pain. Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). Furthermore, an episodic act or omission of a prison official does not violate the Eighth Amendment unless it is the result of "deliberate indifference" to an inmate's basic human needs. Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996). In the end, Inglese and/or Gusman can be liable under §1983 only if they knew "that [Glasper] faced[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 U.S. 1970, 1984 (1994).

Inglese argues that a review of Glasper's medical records from OPSCO reveals that his care was constitutionally adequate. Relying on these records, Inglese contends that upon his entry into OPP, Glasper underwent a medical intake screening at which his various medical conditions and prescriptions were noted. Inglese further argues that Glasper was started on his home

4

medications or equivalent substitutions immediately.
Furthermore, Glasper was placed on the Medical Observation Unit
at OPP, which provides 24 hour monitoring and medical care.
Here, Glasper was treated by Dr. Samuel P. Gore, now the medical
director for OPP, with various checkups and medication
adjustments between March 16 and April 7, 2005.  Inglese notes
that the records also show that Glasper was consistently given
his medications and further indicate that his conditions actually
*improved* during this time.

After Glasper's April 13 feinting incident, Gore saw him
once again at the Medical Observation Unit.  Glasper admitted to
Gore that he had experienced brief bouts of lightheadedness and
nausea on getting out of bed since he had arrived at OPP.
However, these symptoms had not been reported to the medical
staff.  These symptoms were consistent with vascular
deconditioning, but Glasper was not having any chest pain or
problems walking, and was otherwise doing well in terms of his
chronic pulmonary condition.  Gore did note for the first time a
murmur that was previously undocumented, and referred Glasper for
an echocardiogram.  Two days later, Glasper returned to Gore and
reported that he was feeling good, had been exercising, and
denied any symptoms of congestive heart failure.  Gore also
instituted diabetes testing at this time.

Finally, on April 21, Gore saw Glasper for a follow-up, at

which Glasper indicated that he had continued exercising, which controlled his positional blood pressure changes and dizzy spells. At this appointment, Gore indicated to Glasper that his blood work revealed that he had diabetes. As such, Glasper was educated about the disease and prescribed glipizide to control the diabetes. After this visit, at which all vital signs were normal, Glasper was transferred to the Medical Housing Unit from the Observation Unit for continued diabetes monitoring. The night of his death, Glasper exercised and talked to his cell mate, who indicated that Glasper had no complaints or problems during the evening prior to his passing away in his sleep that night.

After his death, it was discovered that Glasper had not been taking his lisinopril (to control blood pressure and congestive heart disease) and Mevacor (to lower cholesterol), as evidenced by the fact that he had unused pills in his possession.

Based on all these alleged facts as evidenced in Glasper's medical records, Inglese argues that Plaintiffs' allegations do not rise to the level of deliberate indifference necessary to state a claim under § 1983.

In opposition, Plaintiffs argue that Gusman and Inglese have themselves admitted facts that preclude summary judgment. First, Plaintiffs note that Defendants admit that Glasper's medications were switched upon his incarceration. Specifically, Plaintiffs

point out that Glasper was admittedly given "equivalent substitutions" for his prescribed medicines, and also had his "medications adjusted" at various times during his treatment at OPP. Plaintiffs argue that these substitutions and/or adjustments amounted to substantive changes in his medication regime. Likewise, Plaintiffs note that Defendants' statement of uncontested facts reveals that they failed to adequately review Glasper's medical history and thus failed to discover that Glasper had been diagnosed with Diabetes in October of 2004. Instead, and as a result, Defendants had no knowledge of the illness until April 21, 2005 - one day before his death - after performing their own tests. Plaintiffs also note that Defendants suggest that Glasper was controlling symptoms of his high blood pressure with exercise, in lieu of his prescribed medications.[2] Finally, Plaintiffs argue that Defendants' admission that Glasper

_____

[2] Plaintiffs point to paragraph 21 of Defendants statement of uncontested facts for this argument:

> On April 21, 2005, Dr. Gore saw Mr. Glasper again in the Medical Observation Unit for follow-up. Mr. Glasper reported that he was doing "very well" and exercising regularly, which controlled his positional blood pressure changes. **He was still having some lightheadedness upon waking up in the morning, but was controlling it with exercise and caution when getting out of bed.** He continued to deny chest pains or shortness of breath.

Rec. Doc. 39-1 (emphasis added). While this statement does indicate that Glasper was controlling his symptoms *in part* by exercising, it does not, as Plaintiffs suggest, indicate that he was or was not taking his medications.

had unused medications at the time of his death proves that there was no effective monitoring system for his care and treatment.

Further, Plaintiffs submit the affidavit testimony of Rose Glasper (Glasper's wife), Cornell Glasper (Glasper's son), and Deanne Sandel (Glasper's attorney), which all indicate that OPP medical staff both failed to administer, and in some cases ran out of, Glasper's medications. In addition, Sandel's affidavit states that when she attempted to bring Glasper's home medications to OPP, she was informed that they could not give Glasper those medications and that they would give him generic equivalents because they did not have the exact prescriptions that he used at home. Further, all three affidavits indicated that Glasper continuously complained during his incarceration that he was not receiving his medications, and that they had been changed by OPP medical staff. The affidavits note that in some instances, Glasper claimed he was not receiving certain of his prescriptions because OPP had run out and had to re-order them. Finally, Plaintiffs argue that the presence of unused pills simply highlights the fact that Defendants did not have procedures in place to guarantee Glasper the proper care he needed in light of his medical conditions.

Plaintiffs contend that even under the strict standard set forth in Farmer, Defendants' conduct amounted to deliberate indifference. Dr. Chaney put Defendants on notice by his

testimony prior to Glasper's trial that his conditions would be life-threatening in the absence of proper treatment. Despite this notice, Plaintiffs allege that Defendants failed to properly medicate and monitor Glasper, and also failed to treat his diabetes - which was diagnosed in his medical history *six months before* he entered OPP - until the day before he died.

Finally, Plaintiffs note that they have also asserted supplemental jurisdiction claims under Louisiana law, which Defendants' motion fails to address, that are not subject to summary dismissal.

In reply, Defendants argue that Plaintiffs have failed to present any medical testimony in support of their claims that refutes the affidavit of Dr. Gore regarding Glasper's treatment. Further, Defendants argue that Glasper's medical records speak for themselves with respect to the adequacy of his treatment at OPP, and even indicate that his condition was *improving* while he was incarcerated. Finally, Defendants note, in response to Plaintiffs' arguments regarding their alleged failure to treat Glasper's diabetes, that Glasper's Medical Intake Screening Form, which he himself filled out, specifically indicates that he had not been diagnosed with diabetes. Despite this incorrect information supplied by Glasper, Dr. Gore tested Glasper for diabetes, diagnosed him with the disease, and provided education and medication to control the disorder.

In sum, Defendants note that despite Plaintiffs' arguments regarding their attempts to supply Glasper with his home medications during his incarceration, it is the policy of OPP for purposes of efficiency, as well as the safety of inmates and staff, that only trained professionals administer prescribed medications to inmates.  As such, visitors are not allowed to bring prescription drugs into OPP facilities.

## **DISCUSSION**

### A.   **Summary Judgment Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Fed. R. Civ. Proc. 56(c)). The moving party bears the initial burden of demonstrating to the court that there is an absence of genuine factual issues.  <u>Id</u>. Once the moving party meets that burden, the non-moving party must go beyond the pleadings and designate facts showing that there is a genuine issue of material fact in dispute.  <u>Id.</u>  "A factual dispute is 'genuine' where a reasonable jury could return a verdict for the non-moving party.  If the record, taken as a whole, could not lead a rational trier of fact to find for the

non-moving party, then there is no genuine issue for trial and summary judgment is proper." <u>Weber v. Roadway Exp., Inc.</u>, 199 F.3d 270, 272 (5th Cir. 2000) (citations omitted).  The non-moving party's burden "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. [The courts] resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. **[The courts] do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.**" <u>Little</u>, 37 F.3d 1075  (emphasis in original)(citations omitted).

**B.    Claims under §1983 and the Eighth Amendment based on Allegedly Inadequate Medical Care**

Plaintiffs' claims arising out of Glasper's death are governed by the same standards as would govern a claim by Glasper himself.  In <u>Estelle v. Gamble</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 and the Eighth Amendment[3] for inadequate medical

---

[3]  The Eighth Amendment, not the Fourteenth Amendment, "serves as the primary source of substantive protection to convicted prisoners." <u>Austin v. Johnson</u>, 328 F.3d 204, 210 n. 10 (5th Cir. 2003) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)).  Because Glasper had been convicted at the time of his death, and notwithstanding the fact that he had not yet been sentenced and the pendency of an

care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. 429 U.S. 97, 104 (1976). Only deliberate indifference, "an unnecessary and wanton infliction of pain ... or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). "If, however, the risk is obvious, the prison official's knowledge of a substantial risk of harm may be inferred." Bennett v. Louisiana ex rel. Dept. Of Public Safety and Corrections, 2009 WL 102080, *4 (5th Cir. Jan. 15, 2009). However, this inference based on an official's knowledge only applies in "exceptional circumstances." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The Farmer definition of deliberate indifference applies to Eighth Amendment claims based

---

appeal of his conviction, the claims under §198 in this case are governed by Eighth Amendment standards. In any event, the same standard applies to claims based on episodic acts or omissions by jail officials, regardless of whether the plaintiff is a pre-trial detainee or a convicted prisoner. See Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999)

on medical care.  <u>Id</u>.  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."  <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir. 2003).  As noted by the Fifth Circuit:

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir.1997) (citing <u>Board of County Comm'rs v. Brown,</u> 520 U.S. 397, 410 (1997)) (additional citations and footnote omitted).

"'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir.1997).  As a general rule, "[d]eliberate indifference is an extremely high standard to meet." <u>Gobert v. Caldwell</u>, 463 F.3d 339, 346 (5th Cir. 2006).  In the end, a plaintiff must show that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir.1985)

## C. Claims under §1983 against Defendants in their Individual Capacities

Plaintiffs have asserted claims under §1983 against Gusman

and Inglese in both their individual and official capacities.
The Fifth Circuit has noted: "Plaintiffs suing governmental
officials in their individual capacities . . . must allege
specific conduct giving rise to a constitutional violation. This
standard requires more than conclusional assertions: The
plaintiff must allege specific facts giving rise to the
constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th
Cir.2002) (citation omitted). Additionally, in the context of
§1983 claims against a defendant in his individual capacity,
"[p]ersonal involvement is an essential element of a civil rights
cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th
Cir.1983). Thus, in order for Plaintiffs' claims to proceed,
they must present evidence of personal involvement by Gusman and
Inglese in the events leading up to Glasper's death.

   D.   **Official Capacity Claims**[4]

---

   [4]   As Defendants correctly note, to the extent that
Plaintiffs allege vicarious liability against Gusman and Inglese
under §1983, such claims are improper: "Supervisory officials
cannot be held vicariously liable in §1983 cases solely on the
basis of their employer-employee relationship." Monell v. Dept.
of Soc. Svcs., 436 U.S. 658, 693 (1978). If a supervisor is not
personally involved in the alleged constitutional deprivation, he
may be held liable only if there is a sufficient causal
connection between the supervisor's wrongful conduct and the
constitutional violations. Thompkins v. Belt, 828 F.2d 298,
303-04 (5th Cir.1987). In order to demonstrate a causal
connection, the supervisor would have to "implement a policy so
deficient that the policy itself is a repudiation of
constitutional rights and is the moving force of the
constitutional violation." Id. at 304. As discussed at further
length below, Plaintiffs have not demonstrated a causal
connection vis-a-vis any policy instituted by Gusman and/or

14

Plaintiffs also assert claims against Defendants in their official capacities. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Gusman and/or Inglese would in reality be a claim against the local governmental body itself. In order to hold a local governmental body accountable for a constitutional violation, a plaintiff must show that (1) an employee of the local governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference. See Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999). As the Fifth Circuit has explained:

> The subjective deliberate indifference standard focuses on what the municipal employee actually knew. The objective deliberate indifference standard considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights.

Corley v. Prator, 290 Fed. Appx. 749, 752 (5th Cir. 2008) (citing Lawson v. Dallas County, 286 F.3d 257, 264 (5th Cir. 2002)). Additionally, an episodic act or omission of a prison

---

Inglese.

official will not give rise to a claim under the Eighth Amendment unless the official acted with deliberate indifference.  Hare v. City of Corinth, 74 F.3d 633, 641-42 (5th Cir. 1996).  A failure to raise an issue of fact as to subjection deliberate indifference obviates the need for a court to address the objective indifference requirement.  See Corley, 290 Fed. Appx. At 753.  Thus, in order for Plaintiffs' claims against Gusman and Inglese in their official capacities to proceed, they must include proof that Defendants acted with **subjective** deliberate indifference *and* that they did so pursuant to a policy or custom adopted by the municipality with **objective** deliberate indifference.

### E.  Application

Plaintiffs have not alleged nor provided any summary judgment evidence related to any *personal involvement* of Gusman or Inglese in the events that led to Glasper's death.  First, although Plaintiffs' Complaint purports to assert both individual and official capacity claims against Gusman and Inglese, it does not assert any *personal* involvement of either of the Defendants in the events that led to Glasper's death.[5]  Additionally, the summary judgment record does not include any evidence that Gusman was personally involved in Glasper's allegedly inadequate

---

[5] See Rec. Doc. 1, ¶¶3-4.

treatment.  Furthermore, the record reveals that Dr. Gore, not

Inglese, was the person directly responsible for Glasper's

treatment at OPP.  Thus, the summary judgment record clearly

reveals a lack of any material issue of fact regarding

Defendants' personal involvement in the events of Glasper's

death.  As such, Plaintiffs' §1983 claims against Defendants in

their individual capacities fail as a matter of law.  See

Fergason v. Smith, 189 F.3d 468, 1999 WL 548441, *1 (5th Cir.

1999) (affirming summary judgment in favor of sheriff and prison

supervising physician, in their individual capacities, based on

plaintiff's failure to show that sheriff "participated in any

wrongful conduct which caused the alleged denial of care" and

based on summary judgment evidence that physician "did not

examine or treat [plaintiff] during the time in question").

Likewise, in terms of their official capacity claims against

Defendants, Plaintiffs have not alleged nor presented sufficient

summary judgment evidence of subjective deliberate indifference

on the part of Gusman or Inglese.  Additionally, Plaintiffs have

not presented evidence regarding any policy or custom of improper

medication and treatment in OPP.  As such, their official

capacity claims also fail as a matter of law.

In fact, the summary judgment record in this case belies any

possible claim of deliberate indifference by Defendants in

violation of the Eighth Amendment.  As noted earlier,

17

"[d]eliberate indifference is an extremely high standard to meet." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Plaintiffs' allegations of deliberate indifference are not born out by the summary judgment evidence. In addition to the fact that Plaintiffs have not alleged nor proven facts to support either official or personal capacity claims against Defendants, the present record does not reflect deliberate indifference on the part of *anyone* associated with Glasper's care.

First of all, the various affidavits presented by Plaintiffs are inadequate proof of the alleged facts of Glasper's treatment in the face of both the affidavit of Dr. Gore, Glasper's treating physician, as well as Glasper's certified medical records from the period of his incarceration. Neither Mrs. Glasper, Cornell Glasper, nor Deanne Sandel can testify based on personal knowledge as to the *actual treatment* Glasper received during his incarceration. While they may be able to testify as to what Glasper told them about which medications he was receiving and when he was receiving them, to the extent their testimony about what Glasper said conflicts with the affidavit testimony of his treating physician Dr. Gore as well as his certified medical records, their affidavits cannot refute Defendants' summary judgment evidence. In this regard, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of

18

deliberate indifference to serious medical needs.  <u>Spears v.</u>
<u>McCotter</u>, 766 F.2 179, 181 (5th Cir. 1985) overruled on other
grounds by <u>Neitzke v. Williams</u>, 490 U.S. 319, 324 (1989).
Likewise, the medical records of sick calls, diagnoses, and
medications may rebut an inmate's allegations of deliberate
indifference to serious medical needs.  <u>Banuelos v. McFarland</u>, 41
F.3d 232, 235 (5th Cir. 1995).  Furthermore, "[w]here questions
regarding medical care are present, it is readily apparent that
expert opinion informs any decision as to whether genuine issues
of fact exist with regard to the quality of care
provided-particularly in the context of constitutional
violations-in all but the most egregious circumstances where
there is a total absence of care."  <u>Mooney v. Dallas County</u>, 2008
WL 151250, *4 (N.D. Tex. Jan. 14, 2008); see also <u>Campbell v.</u>
<u>McMillin</u>, 83 F. Supp. 2d 761, 766 (S.D. Miss. 2000) (granting
defendant's motion for summary judgment in §1983 claim arising
from death of inmate from cardiovascular failure after 2-3 day
delay in receiving prescription medication based on plaintiff's
lack of expert causation evidence).  The various affidavits
submitted by Plaintiffs do not specifically allege any facts,
other than vague assertions that *unidentified persons* did not
give Glasper *some* of his medications *some* of the time.
Furthermore, the affidavits do not in any way indicate how or
whether the alleged unconstitutional acts of the Defendants

caused Glasper's death. The affiants in Plaintiffs' affidavits are not qualified to offer any opinion testimony regarding causation, and as such the affidavits cannot stand as adequate proof of causation. See, e.g., <u>Campbel</u>, 83 F. Supp. 2d at 766; <u>Martinez-Aquero v. Gonzalez</u>, 2005 WL 388589, *1(W.D. Tex. Feb. 2, 2005) ("Neither plaintiff nor her aunt are medical experts per Federal Rule of Evidence 702, and while plaintiff may have personal knowledge of her condition as a result of a prior medical evaluation, she is not competent to make a causation analysis that would require expert knowledge."); <u>Hardge v. Epps,</u> 2007 WL 2454059, *3-4 (S.D. Miss. July 26, 2007). In sum, these affidavits are insufficient to refute the evidence submitted by Defendants on the present summary judgment record. As such, Plaintiffs' claims fail, as there is no evidence of deliberate indifference by Defendants.

Furthermore, Dr. Gore's affidavit and the medical records indicate that Glasper was receiving adequate medical care as required under the Eighth Amendment. As an initial matter, Glasper was seen a total of ten times by Dr. Gore between March 16, 2005 (five days after he was remanded into OPSCO custody) and April 21, 2005 (the day before his death). Over the course of these visits, Dr. Gore monitored and treated Glasper's various conditions. The records of these visits indicate a continuing effort by Dr. Gore to address Glasper's various medical

conditions through medication and continued monitoring.  See Rec.
Doc. 39-3, Manual Attachment - Medical Records, pp.27-30, 17-23
(hereinafter "Medical Records).  Although Plaintiffs allege that
Dr. Gore's adjustment of Glasper's medications conflicted with
the treatment recommended by Glasper's treating physician Dr.
Chaney, even "[u]nsuccessful medical treatment, acts of
negligence, or medical malpractice do not constitute deliberate
indifference, nor does a prisoner's disagreement with his medical
treatment, absent exceptional circumstances." <u>Bennett v.
Louisiana ex rel. Dept. Of Public Safety and Corrections</u>, 2009 WL
102080, *4 (5th Cir. Jan. 15, 2009).  "Furthermore, the decision
whether to provide additional treatment is a classic example of a
matter for medical judgment." <u>Gobert v. Caldwell</u>, 463 F.3d 339,
346 (5th Cir.2006) (quotation omitted).  However, in this case,
Dr. Gore's treatment was *not* unsuccessful - in fact, the medical
records indicate that Glasper's medical conditions, and
specifically his hypertension and orthostatic symptoms, were
actually *improving* just before his death.  Medical Records, pp.
18-19.  Likewise, a mere difference in opinion and appropriate
methods of treatment does not indicate deliberate indifference.
<u>Stewart v. Murphy</u>, 174 F.3d 530, 535 (5th Cir. 1999).  Further,
the question of whether "additional diagnostic techniques or
forms of treatment is indicated is a classic example of a matter
for medical judgment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 107

(1976).  Finally, "[t]he Fifth Circuit has held that the fact
that medical care given is not the best that money can buy, and
the fact that a dose of medication may occasionally be forgotten,
does not amount to deliberate indifference to serious medical
needs."  Adams v. Nolen, 2009 WL 57105, *4 (E.D. Tex. Jan. 2,
2009) (citing Mayweather v. Foti, 958 F.2d 91 (5th Cir.1992)).[6]

In addition, Glasper's medical records indicate that he
received all his prescribed medications throughout the period of
his incarceration.  The Medication Administration Records
("MARs") indicate that Glasper received various medications, in
accordance with orders from Drs. Gore and Inglese, between the
March 11, 2005 date of his remand to OPP and his death on April
21, 2005.  See Medical Records, pp. 39-49.  Despite Plaintiffs'

---

[6]  The Court also notes that, despite Plaintiffs'
allegations that Defendants were responsible for the failure of
OPP staff to review Glasper's medical history and determine that
he was diabetic, the Medical Records actually reveal a different
story.  Specifically, as noted by Defendants, Glasper's initial
exam and medical intake screening, for which Glasper provided
information and which he verified by his signature, indicated
that he *did not have and had never been diagnosed with* diabetes.
Furthermore, Dr. Gore's notes from his April 15, 2005 visit with
Glasper indicate that Glasper told him that he did not have
diabetes and had never been diagnosed with diabetes.  Medical
Records, p. 19.  Mr. Glasper made these statements despite the
fact, as alleged by Plaintiffs, that he had been diagnosed with
diabetes in October of 2004.  Nonetheless, Dr. Gore performed
diagnostic testing, discovered that Glasper did suffer from
diabetes, prescribed medication, and provided Glasper with
"extensive education" regarding his condition.  This by no means
suggests deliberate indifference, and if anything indicates a
resolute effort by Dr. Gore, in spite of Glasper's misstatements,
to properly diagnose and treat Glasper's illness.

conclusory and unsupported allegations to the contrary, the
present summary judgment record indicates that Glasper was
properly and systematically provided with his medications
throughout the period of his incarceration.[7]  While the MARs do
include at least one instance on April 10, 2005, when Glasper's
prescription for Metoprolol had to be reordered, the records also
indicate that the prescription was administered for the remainder
of that month, with only a one to two day interruption.  Medical
Records, pp.46-47.  Furthermore, the Medical Records reveal that,
at the time of his death, Glasper was found to have various extra
pills in his possession, including some of his Lisinopril and
Mevacor prescriptions.  Medical Records, p. 15 & 32.  The
presence of these extra pills indicates that it was Glasper

---

[7]  The MARs apparently indicate that Glasper received some
medications on dates *subsequent* to the April 22, 2005 date of his
death.  See Medical Records, pp. 39-40.  Neither the Plaintiffs
nor the Defendants have addressed nor attempted to explain this
obvious discrepancy in the MARs.  However, the Court notes that
the Medical Records describe some of Glasper's medications as
"D.O.T" - "Direct Observation Therapy."  See Medical Records, p.
32.  Based on this descriptor, it appears that some medications -
specifically Coumadin- were directly administered by staff at the
MOU and OPSCO, while others were apparently given to Glasper in
certain quantities for his use on his own recognizance and with
doctor's orders.  Thus, as far as the Court can determine without
any explanation from the parties regarding the proper
interpretation of the Medical Records, the apparent discrepancy
of post-mortem medication administration can be explained if the
records simply indicate that Glasper was given pills for his non-
D.O.T. prescriptions for an extended number of days.  In any
event, this discrepancy, left unexplained and unaddressed, does
not present a material issue of fact as to any deliberate
indifference by the Defendants.

himself who failed to take some of his prescribed medications, and not the deliberate indifference of any OPP staff in failing to administer them.  In the end, the present record does not indicate any deliberate indifference by Defendants with respect to Glasper's medical care, and thus summary judgment is appropriate.

In a similar case before the Northern District of Texas, the court granted summary judgment in favor of the defendant county, dismissing plaintiff's deliberate indifference claims under §1983 due to the alleged failure of prison staff to properly administer plaintiff's blood pressure medication.  Sheppard v. Dallas Cty. Tex., 2008 WL 656889, *1 (N.D. Tex. Mar. 6, 2008).[8]  The plaintiff in Sheppard suffered a stroke as an alleged result of the prison staff's failure to timely administer his blood pressure medications.  Id. at *2.  The Sheppard court noted that to support his §1983 claims, plaintiff  "must identify an official who knew that had high blood pressure, understood the risks of high blood pressure, knew the appropriate level of treatment, was aware that [plaintiff] had been denied that level of treatment, and subjectively intended that this happen."  Id.

---

[8]  Although the plaintiff in Sheppard was a pre-trial detainee whose §1983 claims arose under the Fourth and Fourteenth Amendment, the same deliberate indifference standard applies. See Sheppard, 2008 WL 656889 at *2 (noting that pre-trial detainee's "protections are said to be at least as great as ... [those] available to a convicted prisoner").

at *8.  Likewise, in this case, Plaintiffs were required to bring forth evidence that Defendants knew and understood the risk of Glasper's various conditions, were aware that Glasper was being denied treatment for those conditions, and subjectively intended for this denial to occur.  The summary judgment record in this case simply does not support such a showing.  As such, Plaintiffs claims should be dismissed.

### F.    Claims Against "John Doe" Defendants

Plaintiffs have also asserted claims against four unnamed "John/Jane Doe" defendants, who were allegedly Glasper's treating physicians at OPSCO, the director of nursing at OPSCO, and a physician at MCLNO.  However, as the record now stands, Plaintiffs have yet to identify these unnamed defendants.  The Fifth Circuit has held that "for a 'John Doe' defendant, there was no 'mistake' in identifying the correct defendant; rather, the problem was not being able to  identify that defendant." Jacobsen v. Osborne, 133 F.3d 315, 321 (5th Cir.1998). Accordingly, plaintiff was not allowed to substitute recently identified individuals under Rule 15(c)(3) of the Federal Rules of Civil Procedure, as defendants who had previously been referenced only as "John Doe."  Id.  Since plaintiff could not file an amended complaint relating back to the  filing of his original complaint, his claims against the originally unnamed defendants were futile.  Id.  While the Fifth Circuit did "not

reach the timeliness issue" presented by the plaintiff's appeal –
i.e. whether his claims against the recently identified
defendants would be prescribed due to his inability to amend his
complaint – the Jacobsen court's holding necessarily leads to
that result.  No specified federal statute of limitations exists
for § 1983 actions; therefore, federal courts borrow the forum
state's personal injury limitations period.  Gleason v. Pattison,
2009 WL 1154937, *1 (5th Cir. 2009) (citing Rodriquez v. Holmes,
963 F.2d 799, 803 (5th Cir.1992)). Louisiana Civil Code article
3492's one-year prescriptive period applies to § 1983 actions.
Id. (citing Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir.1989)).

    As a result, even if Plaintiffs sought to amend their
complaint to properly identify the currently unnamed "John/Jane
Doe" defendants in their complaint, such amendment would not be
allowed and/or would lead to a finding of prescription of
Plaintiffs' claims.  Thus, Plaintiffs' §1983 claims against the
unnamed defendants in this case should be dismissed.

    **F.    Plaintiffs' State Law Claims**

    Defendants have not addressed the Plaintiffs' claims under
Louisiana Civil Code Article 2316, which are before this Court as
a matter of supplemental jurisdiction.  As such, the Court will
not issue any dispositive ruling on the Plaintiff's pendent state
claims.

Nonetheless, the dismissal of Plaintiffs' claims under federal law in accordance with this Order leave only the pendent state law claims before the Court.  As a result, the Court finds that these claims should be dismissed under 28 U.S.C. §1367(c), without prejudice, because all the federal claims over which this Court has original jurisdiction will be dismissed as a result of this order.  Accordingly,

**IT IS ORDERED** that Defendants' **Motion for Summary Judgment (Rec. Doc. 39)** regarding Plaintiffs' claims under federal law is hereby **GRANTED**.  Plaintiffs' claims under 28 U.S.C. §§1983, 1988 and all other federal claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiffs' state law claims are hereby **DISMISSED WITHOUT PREJUDICE** pursuant to the Court's authority under 28 U.S.C. §1367(c).

New Orleans, Louisiana, this 27th day of May , 2009.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE